IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EUGENE S.,[1] | Case No. 6:19-cv-01692-JR |
| Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINSTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Eugene S. brings this action for judicial review of the final decision of the Commissioner of Social Security denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1973, plaintiff alleges disability beginning July 26, 2013, due to heart problems, depression, back pain, frequent urination, and sleep apnea.[2] Tr. 171-72, 186. Plaintiff's application was denied initially and upon reconsideration. Tr. 130-37. On October 10, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-76. On October 24, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 16-27. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity during the adjudication period. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "chronic heart failure, ischemic heart disease, obstructive sleep apnea, and obesity." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work except he:

> can lift and carry 20 pounds occasionally and ten pounds frequently; can stand and walk up to two hours in an eight-hour workday, and can sit for about six hours in an eight-hour day; can push/pull consistent with lift and carry; can occasionally

---

[2] Plaintiff previously applied for Social Security disability benefits, alleging an onset of October 1, 2010, due to "cardiomyopathy, congestive heart failure, ventricular tachycardia, and sleep apnea"; the ALJ denied plaintiff's prior application on July 25, 2013, and this District subsequently affirmed Tr. 80-93; Schwartz v. Colvin, 2016 WL 4443168, *1 (D. Or. Aug. 19, 2016). In light of plaintiff's date last insured of December 31, 2015, this appeal exclusively concerns an approximately 2.5 year period. Tr. 18.

Page 2 – OPINION AND ORDER

    climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can frequently reach bilaterally; can tolerate no exposure to pulmonary irritants; and can tolerate occasional exposure to workplace hazards, such as unprotected heights and exposed, moving machinery.

Tr. 22.

  At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 25. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as electrical accessories assembler, small products assembler, and wire worker. Tr. 25-26.

## DISCUSSION

  Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) rejecting the lay statements of his wife, Wendy S.; and (3) improperly weighing the medical opinions of Carmelindo Siqueira, M.D., and the state agency consulting sources (i.e., Nathaniel Arcega, M.D., and Martin Kehrli, M.D.).[3] Pl.'s Opening Br. 5-9, 11-14 (doc. 19).

**I. Plaintiff's Testimony**

  Plaintiff argues the ALJ erred by discrediting his subjective symptom testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . .

---

[3] Plaintiff also argues that the ALJ "insufficiently addressed obesity" or, in the alternate, "failed to develop the record" in regard to his weight change. Pl.'s Opening Br. 9, 14 (doc. 19). As addressed below, these issues are subsumed by the ALJ's other errors.

Page 3 – OPINION AND ORDER

testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he was unable to work due to an inability to exert himself and carry on conversations due to his heart conditions. Tr. 59-60. He indicated that he was mentally and physically functional for an hour or two after waking, but that, due to fatigue and stamina issues, he became less attentive and functional as the day goes on. Tr. 47, 52, 55. Plaintiff also endorsed shortness of breath and "constant" dizziness due to his medications, especially upon sitting up or standing too quickly. Tr. 48.

In terms of daily activities, plaintiff reported that he drove his daughter to school in the morning four days per week, attended church once per week in the evening (which occasionally entailed him driving), and performed limited chores earlier in the day, such as dishes and laundry. Tr. 40-41, 52. In addition, plaintiff explained that he spent time in his shop working on his "rig . . . pretty much just cleaning up rust." Tr. 58.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but

his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21-22. Specifically, the ALJ cited to June and November 2016 chart notes and plaintiff's wife's February 2017 "Third-Party Adult Function Report" in support of the proposition that plaintiff was capable of engaging in "normal, if slowed, activities of daily living, including socializing with his parents, attending church weekly, driving his kids places, shopping, and cleaning," as well as "go[ing] to his friend's auto repair shop to hang out or trouble shoot for an hour or two."[4] Tr. 21.

Here, although the ALJ identified a legally sufficient reason to reject plaintiff's testimony regarding the extent of his functional capacities throughout the day, that reason is not supported by substantial evidence. See Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment").

Initially, the Court notes that the ALJ does not cite to any evidence from within the adjudication period to support his conclusion. This is likely because plaintiff's contemporaneous reports to his medical providers from the relevant time period do not recount any daily activities. See, e.g., Tr. 542-49, 568-71, 675-705. Nevertheless, these records generally suggest that plaintiff lived a sedentary lifestyle and was struggling with dizziness, fatigue, and labored breathing. See

---

[4] The ALJ also cited to plaintiff's failure to seek treatment during the adjudication period as a basis to afford less weight to his testimony concerning mental impairments, back pain, and frequent urination. Tr. 19, 21-23. Plaintiff does not challenge these findings on appeal and appears to take issue solely with the ALJ's treatment of his testimony concerning an inability to sustain activities throughout an eight-hour day. Pl.'s Opening Br. 6-9 (doc. 19); Pl.'s Reply Br. 2-4 (doc. 22); see also Bullock v. Berrien, 688 F.3d 613, 618 (9th Cir. 2012) (court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief"). Furthermore, to the extent plaintiff relies on Christine G. v. Comm's Soc. Sec., 2020 WL 417778 (D. Or. Jan. 27, 2020), that case is distinguishable, as the ALJ in this case did not simply "summarize[e] the medical opinion evidence and assig[n] weight [there]to" in evaluating subjective symptom statements. Id. at *5.

Page 5 – OPINION AND ORDER

Tr. 645 (plaintiff "complaint[ing] [of] dizziness, fatigue as the day goes by" in May 2014); see also Coaty v. Colvin, 2015 WL 1137189, *4-5 (D. Or. Mar. 11, 2015), aff'd, 673 Fed.Appx. 787 (9th Cir. 2017) ("contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning" where "there is a remote date last insured").

In any event, the majority of this post-adjudicative period evidence is entirely consistent with plaintiff's hearing testimony and, as such, does not support a negative credibility finding. Tr. 225-32, 654, 712; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Notably, Wendy S.'s "Third-Party Adult Function Report" reveals that plaintiff "occasionally drives [his] daughter to school," attends church once per week if he is not "too tired," cooks dinner "once or twice [per] week" while sitting down and with assistance from a family member, and helps with laundry/vacuuming about once per month and dishes "once or twice per week" while taking breaks "every 15 minutes" or with assistance from a family member. Tr. 226-29. She also indicated that plaintiff is "quick to exhaustion and dizziness," and can no longer engage in "night visits to friends [because] he has no energy at night." Id. Accordingly, plaintiff's wife indicated that his social activities were limited to visiting his parents and "sit[ting] at his friend's auto repair shop sometimes . . . for 1-2 hours" before "com[ing] home to rest." Tr. 229.

When read in context, the only other evidence referenced by the ALJ – chart notes from June and November 2016 – similarly reflect that plaintiff occasionally spent time in the shop despite his "chronic dizziness" and lack of mental clarity.[5] Tr. 654, 712; see also Reddick, 157

---

[5] There is only a single chart note in the 1100-plus page record – i.e., the June 2016 chart note cited by the ALJ – indicating a potentially greater functional capacity. Namely, plaintiff reported spending "2-3 hours in his shop" during a period wherein he was "trying to be more active." Tr.

Page 6 – OPINION AND ORDER

F.3d at 722-23 (ALJ's "paraphrasing of record material" in a manner that was "not entirely accurate regarding the content and tone of the record" was error).

In sum, activities such as plaintiff's – i.e., occasionally spending time in the shop for a couple of hours, driving his daughter to school in the morning, attending church once a week, and taking several hours, with frequent breaks, to complete relatively limited chores – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. See Ellefson v. Colvin, 2016 WL 3769359, *3-4 (D. Or. July 14, 2016) (reversing the ALJ's finding regarding the claimant's daily activities under analogous circumstances). Accordingly, the ALJ committed harmful legal error in evaluating plaintiff's subjective symptom statements.

## II.     Third-Party Testimony

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Wendy S.'s statements. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

As discussed above, plaintiff's wife completed a "Third-Party Adult Function Report" in support of his application. Tr. 225-32. The ALJ's afforded "some weight" to Wendy S.'s lay statements but "less weight than the opinions of the medical professionals, who care specifically for [plaintiff's] medical problems and whose opinions are more objective and reflect their professional expertise." Tr. 24.

---

712. This sole reference does not constitute substantial evidence, even presuming it was inconsistent with plaintiff's hearing statements.

Page 7 – OPINION AND ORDER

The ALJ erred to the extent he rejected Wendy S.'s statements because they were subjective or did not emanate from a medical provider. See Jackson v. Berryhill, 2018 WL 1835811, *8-9 (D. Nev. Apr. 18, 2018) (ALJ improperly disregards lay testimony on the basis that the witness is "not medically trained" or "has a personal relationship with the claimant," or proffers statements that are "not supported by medical evidence in the record") (citations and internal quotations omitted); see also Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) ("[t]he fact that lay testimony . . . may offer a different perspective than medical records alone is precisely why such evidence is valuable"). Moreover, as addressed herein, the medical evidence does not contravene Wendy S.'s testimony. The ALJ erred as to the third-party statements.

### III.  Medical Opinion Evidence

Plaintiff asserts the ALJ wrongfully rejected the opinions of Drs. Siqueira, Arcega, and Kehrli. At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be discredited by specific and legitimate reasons, supported by substantial evidence. Id. To reject the opinion of a non-examining doctor, the ALJ must reference "specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

### A.      Dr. Siqueira

Plaintiff initiated care with Dr. Siqueira in June 2012 for treatment of his heart conditions. Tr. 514-16. Plaintiff thereafter saw Dr. Siqueira approximately every one-to-four months for follow-up visits and medication management through February 2014. Tr. 517-30, 532-49.

In August 2012, Dr. Siqueira authored a letter stating: "[plaintiff] has had dilated cardiomyopathy, severe left ventricular dysfunction, recurrent ventricular tachycardia requiring an implantable cardioverter-defibrillator and has been disabled and not able to seek employment at the present time." Tr. 531.

The ALJ afforded Dr. Siqueira's opinion "little weight because it was issued well before the current period of alleged disability." Tr. 24. "Medical opinions that predate the alleged onset of disability are of limited relevance." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir.2008).

The date on which Dr. Siqueira's opinion was rendered is therefore dispositive because, during that period, plaintiff was not disabled as a matter of law in light of the prior ALJ's decision. Tr. 80-93. Indeed, plaintiff does not seek to reopen his prior application as part of these proceedings and, in general, an ALJ's prior findings may not be disturbed in a subsequent appeal. See, e.g., Khal v. Colvin, 2015 WL 5092586, *3 (D. Or. Aug. 27, 2015), aff'd, 690 Fed.Appx. 499 (9th Cir. 2017); see also Schwartz, 2016 WL 4443168 at *4 (affirming the prior ALJ's decision in regard to Dr. Siqueira's August 2012 opinion because it was "brief and conclusory in form," lacked "specific functional limitations," and rendered a vocational rather than a medical opinion). The ALJ's evaluation of Dr. Siqueira's opinion is affirmed.

B.    State Agency Consulting Sources

In April 2017, Dr. Arcega reviewed the record and authored a physical RFC assessment. Tr. 107-09. In relevant part, Dr. Arcega opined that plaintiff could stand/walk "[s]lightly less than 2 hours" and sit "[a]bout 6 hours in an 8-hour workday," needed "to stand and walk to alleviate back pain at least every 2 or 3 hours," and must "[a]void even moderate exposure" to hazards. Tr. 107-08. Further, in the "RFC – Additional Explanation" section, Dr. Arcega remarked:

> Prior rating of sedentary [but more recent evidence] suggest[s] that [plaintiff] indeed has symptom limitation. He does not meet conditions under 4.02 and 3.02 but added obesity I would opine a more limited rating. Certainly this could be the rating at [the date last insured]. Full hearing decision [pertaining to the prior application] was not adopted as the increase in weight represents a significant change in medical condition.

Tr. 109. In May 2017, Dr. Kehrli again reviewed the record and adopted Dr. Arcega's findings. Tr. 120-23.

The ALJ gave "great weight" to the opinions of Drs. Arcega and Kehrli. Tr. 24. However, the ALJ declined to fully adopt the sitting limitation because it "is not specific enough to be used in a vocational analysis." Id. Additionally, the ALJ found that the need to alter positions "every two to three hours is a federal labor requirement and is not therefore reiterated in the [RFC]." Id.

Although the opinions of Drs. Arcega and Kehrli are not a model of clarity, the Court nonetheless finds that the ALJ erred as to this issue. Significantly, the ALJ's decision is silent as to Dr. Arcega's and Dr. Kehrli's limitation to avoid even moderate exposure to hazards and the RFC is inconsistent therewith. See Jason W. v. Comm'r of Soc. Sec. Admin., 2018 WL 6701273, *2 (D. Or. Dec. 20, 2018) (restriction to "'avoid even moderate exposure to hazards' has appeared in numerous ALJ decisions, demonstrating that it is, in fact, an appropriate concrete work-related limitation of function" that must be reflected in the RFC). Furthermore, there is no VE testimony on this subject such that the Court cannot conclude that the error was harmless. Tr. 63-74.

Concerning plaintiff's need to alternate between sitting and standing, Drs. Arcega and Kehrli did not phrase this limitation as being related to a federal labor standard or otherwise link it to the typical break schedule. Finally, Dr. Arcega and Dr. Kehrli indicated that plaintiff was overall more impaired due to weight gain, yet the ALJ formulated a less restrictive RFC than the prior ALJ, despite finding additional severe limitations at step two. Compare Tr. 16-27, with Tr. 80-93. The ALJ erred in weighing the opinions of Drs. Arcega and Kehrli.

## IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by rejecting plaintiff and his wife's testimony, as well as by failing to properly weigh the state agency consulting source opinions. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On one hand, plaintiff consistently endorsed dizziness, dyspnea, and fatigue/stamina issues. On the other hand, plaintiff sustained a prior claim denial premised on

substantially similar impairments. While plaintiff suggests that these symptoms, along with his sleep apnea, arose on or after the alleged onset date, both the prior ALJ decision and medical record make clear that they were considered as part of plaintiff's prior application. See, e.g., Tr. 37-39; Pl.'s Opening Br. 9 n.1 (doc. 19).

Furthermore, the state agency consulting source opinions appear to be based, at least in part, on inaccurately documented information. Critically, Dr. Arcega and Dr. Kehrli specified that plaintiff gained 34 pounds – i.e., "up from 268 [and] now at 302" – and that this increase "represents a significant change in medical condition." Tr. 109, 123. However, the record reflects less fluctuation during the dispositive time frame.

In June 2013, approximately one month before the alleged onset date, plaintiff weighed 293 pounds. Tr. 539; see also Tr. 83 (prior ALJ noting that plaintiff weighed 294 pounds between December 2012 and February 2013). By September 2013, approximately 2 months after the alleged onset date, plaintiff's weight was down to 290 pounds. Tr. 493. Towards the end of the adjudication period, in October 2015, plaintiff's weight had inched up to 304 pounds. Tr. 583. As such, during the adjudication period (and significantly before), it appears as though plaintiff's weight largely remained within a 10-15-pound window, as opposed to the nearly 35-pound fluctuation noted by Drs. Arcega and Kehrli.

Finally, plaintiff's providers repeatedly encouraged him be physically active and despite additional work-up, there was no clear etiology for his dyspnea, dizziness, or fatigue. See, e.g., Tr. 575, 584-86, 628, 658, 662; but see Tr. 525 (Dr. Siqueira informing plaintiff in September 2012 that his "[e]xcess weight may make a big difference over the long run"). In sum, the medical record before the Court does not delineate whether plaintiff's weight fluctuations or other pre-existing conditions corresponded to any changes in his health or functional abilities during the adjudication

period. Cf. SSR 02-1p, available at 2002 WL 34686281, *8 ("minor weight changes" – i.e., a fluctuation representing less than "10 percent of initial body weight" – may be "of little significance to an individual's ability to function").

As such, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with the murky evidence concerning plaintiff's weight gain and associated health impacts (if any), consultation with a medical expert would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 29th day of October, 2020.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge